UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

NO. 6:07-CV-338-REW

PRIMA INTERNATIONAL TRADING                            PLAINTIFF

V.                          OPINION & ORDER

MARK E. WYANT,
QUALIFIED ASSET SALES, LTD. and
GREAT LAKES EQUIPMENT CO.                           DEFENDANTS

\* \* \* \* \*

The Court considers various dispositive motions in this matter, particularly:

A.     Prima International Trading's motion for summary judgment, *see* DE #54, as supplemented and clarified, *see* DE ## 84 & 85, against Defendants Mark Wyant/Qualified Asset Sales, LTD and against Defendant Great Lakes Equipment Co. *See* DE ## 72 & 86 (responsive filings); 82 & 88 (reply filings by Plaintiff).

B.     Great Lakes's motion for summary judgment against Plaintiff. *See* DE ## 87 & 90 (responsive filing).

After careful consideration of all briefing, the full record, and all tendered exhibits and filed depositions, the Court has determined to DENY the motion of Defendant Great Lakes and to GRANT-in-part and DENY-in-part Plaintiff's motion. The Court explains and details its ruling in this Opinion and Order. Essentially, Plaintiff is entitled to judgment against Wyant and Qualified Asset Sales concerning the 773B trucks, with reservation of jury consideration on the calculation of any punitive damage award against Wyant individually. As to the 773D truck claims, Plaintiff is entitled to judgment against Defendant Great Lakes on the warranty claim; Plaintiff has no claim

1

against Great Lakes for punitive damages. The record, which lacks evidence regarding Wyant's knowledge and intent with respect to inaccurate representations as to the 773Ds, precludes summary judgment for Plaintiff on any fraud claim against Wyant concerning those trucks.

**I. Factual Background**

This case centers around the sale of two pairs of heavy Caterpillar trucks–known in the briefing as the model 773Bs and the model 773Ds. Defendant Wyant, an equipment broker, orchestrated the sales to buyer Prima International Trading. Defendant Great Lakes had no involvement in the 773B transaction, but Great Lakes owned and sold the 773Ds to Prima, through the representation of broker Wyant. The sales occurred in the spring of 2007, and the transactions occurred remotely, with Prima at no point actually inspecting the equipment pre-sale. The 773B purchase price was $110,000.00, and the 773D purchase price was $600,000.00. Prima paid in full, and problems soon arose.

It turns out that Wyant sold and took the money for the 773Bs but could not deliver the vehicles. Prima paid the purchase price but quickly discovered that the trucks had already been sold to someone else prior to Prima's purchase. No factual dispute exists about what happened here, because Wyant has pleaded guilty to federal mail fraud regarding his deceptive conduct as to the 773Bs; he awaits sentencing in the Northern District of New York. *See United States v. Wyant*, No. 5:08-CR-127 (N.D.N.Y. Jan. 5, 2009)(minute entry for guilty plea).

As to the 773Ds, the matter is somewhat more complex. At the same time Wyant[1] was dealing with Prima (via President Jerry Volk) on the 773Bs, he was trying to convince Prima to buy

---

[1] Wyant was Qualified's President, and he operated as Qualified. The Court sees no reason–and Qualified provides none–to distinguish Wyant from Qualified in analyzing claims that pertain to both parties.

2

the 773Ds as well. Great Lakes owned the 773Ds, having purchased them through efforts of Wyant, who convinced Great Lakes to buy and repair the 773Ds and then attempt to resell the trucks for a profit. This was not the normal business of Great Lakes, an operator in used equipment parts. However, based on the long (15 year) relationship between Great Lakes and Wyant, Great Lakes did purchase the trucks and authorize Wyant to pursue the repairs and remarket the trucks, all at the expense of Great Lakes but under the supervision of Wyant. Great Lakes plainly authorized Wyant to market and sell the 773Ds. Great Lakes never actually saw the trucks in person; Wyant was responsible for orchestrating all repairs, finding a buyer, and negotiating for Great Lakes.

The key to this case is Wyant's efforts to sell the 773Ds to Prima. Wyant sent a specific e-mail to Prima, via Volk, that contained a listing of attributes concerning the 773Ds. The e-mail, dated April 17, 2007, is the basis for Prima's claims in this case.[2] *See* Complaint, Exhibit B. Prima asserts that the e-mail established express warranties regarding the 773D trucks. Because the trucks did not meet the descriptions provided, Prima asserts warranty and related claims against Wyant and Great Lakes and a fraud claim against Wyant.

Wyant has refunded part of the 773B purchase price, but a balance of $86,000 remains. Prima attempted to reject or revoke acceptance of the 773Ds, but neither Wyant nor Great Lakes recognized that effort. Prima eventually had the trucks repaired, marketed them, and sold them for $550,000. Prima now seeks the loss on the trucks, including the sales loss, repair costs, and other incidents of the alleged breach.

---

[2] Wyant sent essentially the same descriptions to Prima back in November of 2006, but he resent the truck description in April 2007 in an effort to convince Prima to make the purchases. *See* DE #54-4 (November 13, 2006 Wyant to Volk e-mail).

3

## II. Standard of Review

This matter invokes the Court's diversity jurisdiction. *See* 28 U.S.C. § 1332. A federal court sitting in diversity applies the substantive law, including the choice of law rules, of the forum state. *See Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir. 2003); *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 566 (6th Cir. 2001). Whether jurisdiction is based on a federal question or diversity, the Federal Rules of Civil Procedure apply. *See Hayes*, 266 F.3d at 566.

Per Rule 56, summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits demonstrate that no genuine issue of material fact exists and that the moving party is entitled to a judgment as a matter of law. *See* FED. R. CIV. P. 56(c). The Court must construe the evidence and draw all reasonable inferences from the underlying facts in favor of the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 106 S.Ct. 1348, 1356 (1986); *Doe v. Michigan Dep't of State Police*, 490 F.3d 491, 497 (6th Cir. 2007).

The burden of establishing the absence of a genuine issue of material fact is on the moving party initially. *See Celotex Corp. v. Catrett*, 106 S.Ct. 2548, 2553 (1986). Once the moving party discharges its burden, the burden then shifts to the nonmoving party to produce "specific facts" showing a "genuine issue" for trial. *See id.*; *Bass v. Robinson*, 167 F.3d 1041, 1044 (6th Cir. 1999). A "genuine" issue exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *See Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2511 (1986).

**III. Analysis**

*1.     The 773Bs.*

Plaintiff is entitled to a judgment on the 773Bs. The motion for summary judgment establishes, via the testimony of Volk and the tendered plea agreement, that Prima paid for the 773Bs, that Wyant could not deliver the 773Bs, and that Wyant dealt fraudulently[3] with Prima in retaining the purchase money. Mark Wyant admitted liability as part of his criminal plea agreement, and he admitted to defrauding Prima with respect to the 773Bs. *See* DE #54-3, ¶ 5. Wyant does not contest the propriety of judgment as to these items. Wyant's sworn declarations in the criminal case estop any contrary positions here. *See Mason v. Louisville Police Dep't*, 8 F. App'x 326, 327-28 (6th Cir. 2001)(defendant estopped by guilty plea from contradicting, in a civil action, admission made during plea proceeding).

Plaintiff seeks relief under theft by deception, warranty, fraud, and unjust enrichment theories. *See* DE #22 (amended complaint). Wyant represented to Prima that he could deliver the

---

[3]

As the Kentucky Supreme Court recently restated:

> [S]uch a claim [for fraud] requires proof, by clear and convincing evidence, of the following six elements: (1) that the declarant made a material representation to the plaintiff, (2) that this representation was false, (3) that the declarant knew the representation was false or made it recklessly, (4) that the declarant induced the plaintiff to act upon the misrepresentation, (5) that the plaintiff relied upon the misrepresentation, and (6) that the misrepresentation caused injury to the plaintiff. *United Parcel Service Company v. Rickert,* 996 S.W.2d 464 (Ky.1999). The plaintiffs reliance, of course, must be reasonable, *McHargue v. Fayette Coal & Feed Company,* 283 S.W.2d 170 (Ky.1955), or, as the *Restatement* states, "justifiable." *Restatement (Second) of Torts* § 537 (1977).

*See Flegles, Inc. v. Truserv Corp.*, Nos. 2006-SC-000471-DG, 2007-SC-000155-DG, 2009 WL 424813, at *2 (Ky. Feb. 19, 2009).

773Bs, and he received the full purchase price for the trucks. Wyant then neither delivered the trucks nor refunded Prima's money. Whether or not Wyant qualifies as a seller under the UCC, *see infra* part III.2.B., his fraudulent conduct plainly entitles Prima to an equitable and legal remedy. Both he and Qualified also were unjustly enriched by the fraudulent conduct.

As such, the Court will enter a liability judgment in Prima's favor against both Wyant and Qualified. Because, as Prima clarified, the oustanding balance on the original $110,000.00 amount is $86,000.00, the judgment will be for that amount as to the basic liability.

a. <u>Interest</u>

In a diversity action, state law controls whether to award interest. *See Conte v. Gen. Housewares Corp.*, 215 F.3d 628, 633 (6th Cir. 2000); *Phelps v. Unum Provident Corp.*, 245 F. App'x 482, 487 (6th Cir. 2007). In Kentucky, "prejudgment interest follows as a matter of course" where "damages are liquidated." *See Nucor Corp. v. Gen. Elec. Co.*, 812 S.W.2d 136, 141 (Ky. 1991); *see also Poundstone v. Patriot Coal Co., Ltd.*, 485 F.3d 891, 901 (6th Cir. 2007). On a liquidated claim, "a successful plaintiff is '*entitled* to interest'" at 8% per annum – the legal rate provided in KRS § 360.010. *See Poundstone*, 485 F.3d at 903 (emphasis added)(quoting *Pursley v. Pursley*, 144 S.W.3d 820, 828 (Ky. 2004)).

According to the Kentucky Court of Appeals, "pre-judgment interest has traditionally been simple interest," but that is not a legal requirement. *See Reliable Mech., Inc. v. Naylor Indus. Servs.*, 125 S.W.3d 856, 858 (Ky. Ct. App. 2003).[4] Thus, the court of appeals allowed compound interest

---

[4] KRS § 360.010 – the statute applicable to *prejudgment* interest – actually is silent about compounding. In the *post-judgment* context, KRS § 360.040 specifically provides for compound interest. The Kentucky Court of Appeals, in *Naylor*, addressed the discrepancy, holding: "[W]e are not persuaded that the difference in the language of the statutes mean that KRS 360.010 prohibits the compounding of pre-judgment interest." *See Naylor*, 125 S.W.3d at 857-58.

in *Naylor* where "fairness justifie[d] and indeed dictate[d]" the award, explaining:

> Reliable has deprived Naylor of the use of the money rightfully due and owed to it for nearly eight (8) years. Arguably, Naylor would have been capable of earning compound interest on its money during this lengthy time period. We note parenthetically that commercial lending and saving institutions no longer offer simple interest rates.
>
> An award of compound pre-judgment interest in this case does not constitute a punitive reprisal as to Reliable. Rather, it is an equitable means of recognizing the economic reality that Reliable has enjoyed a long opportunity to earn interest on the money that it wrongfully withheld from Naylor. The court's award of compounded pre-judgment interest reconciles and adjusts that inequitable result by providing to Naylor a sum that it might have earned had its money been tendered in a timely manner. Any other holding would diminish the real value of Naylor's recovery in this case.

*Id.*

The "economic realities" discussed in *Naylor* apply equally to the facts of this case. Compound prejudgment interest is proper as to the outstanding amount on the 773Bs from the date of Prima's wire. The judgment shall carry post-judgment interest at the legal rate.[5]

    b.    <u>Punitive damages on the 773Bs</u>

No reasonable jury could fail to find the predicate for a punitive damage award under KRS § 411.184-.186. Wyant has admitted to fraudulent criminal conduct by a higher proof standard than a civil award would require. However, the calculation of any such award must be in the jury's

---

[5]

The Kentucky Supreme Court has not considered whether state law allows compound prejudgment interest. In applying state law, a federal court generally "must follow the decisions of the state's highest court," but if an "issue has not been directly addressed" the court "must anticipate how the relevant state's highest court would rule." *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 563 (6th Cir. 2008)(quotations omitted). An intermediate state appellate court decision is "viewed as persuasive unless it is shown that the state's highest court would decide the issue differently." *See id.* (quotation omitted).

assessment. As such, the Court will reserve for jury consideration, under proper instructions, any punitive damage award against Wyant individually on the fraud and theft by deception theories.[6]

2.   *The 773Ds.*

The 773D claims include breach of warranty, rescission, fraud (against Wyant), and unjust enrichment theories.[7]

Wyant undoubtedly made express factual representations concerning the condition of the 773Ds at the time of sale. His April 17, 2007 e-mail, appended to the Complaint and testified about by Volk, included specific assertions of fact about the specs and attributes of the trucks. The e-mail predated the sales documentation that tracked the invoicing by only *four days* and was a contemporaneous incident of the parties' bargaining. The e-mail included detailed factual representations about truck hours ("14000 hour total time trucks") and condition ("all new cab interior"; "(NO) Cracks on frame"; "any and all repairs made as needed and in Book Form"; "machines were sand blasted cleaned and Painted"; "new cab protector, belt loaded"). *See* DE #1-3 Email, at 2. Wyant additionally represented to Prima that certain engine work had occurred and that the trucks were in a "ready to use" condition. *See* DE #57 Volk Dep., at 36, 34. Volk bought the trucks sight unseen and in complete reliance on Wyant's representations. Ultimately, when potential

---

[6] Prima included Qualified only on the unjust enrichment and warranty claims. As such, Qualified is not a part of the punitive damage discussion.

[7] Prima eventually sold the 773Ds, making rescission inapplicable. Prima agrees that Counts III and VII (unjust enrichment) of the original Complaint now are moot. *See* DE #85-2. The separate claim for consequential damages really only restates remedies sought via other theories. Any punitive damage claim against Wyant hinges on the fraud count.

The Court notes the nonexistence of Count IV and Count VI, and the Court assumes that original Count X no longer is at issue in this case.

customers began complaining about truck condition, Volk had the trucks examined, and the examination revealed multiple defects.

Indeed, Volk presents expert opinions from Don Holden in this matter (and Defendants offer no competing expert analysis). Holden gave a report that itemizes each deficiency in the 773Ds relative to Wyant's representations. Holden not only acted as an expert in the case, but he also oversaw Prima's actual post-sale repairs on the 773Ds. He supplied an affidavit and report in the case, and Jerry Volk also testified in support of the truck deficits and the repairs performed and paid for by Prima, post purchase. *See* DE #54-11 (Holden Report); #85 (damage supplement, with affidavit from Holden); #84 (damage clarification with affidavit from Volk); #57 Volk Dep., at 44. Further, Volk supplied post-sale inspection reports from June of 2007 that detailed numerous inaccuracies relative to Wyant's descriptions. *See* DE## 54-7 to 54-9. The only proof in the record, regarding the condition of the 773Ds at the time of the sale, is Prima's proffer, which establishes numerous material defaults in Wyant's depictions. No factual dispute exists over whether the 773Ds met the conditions stated in the April 17 e-mail from Wyant to Volk.

[Prima also alleges that Wyant, separate and apart from Great Lakes, made representations about a pending lease deal with a third party. Essentially, Wyant represented that he had a lease/purchase in place that he and Prima could fulfill together, for profit. No such deal was in place, as Prima learned after the 773D purchase. *See* DE #57 Volk Deposition, at 34-35.[8] Volk described the alleged deal as "part of the enticement." *See id.*]

---

[8] The Court cites to any deposition page using the pagination in the CM/ECF system.

The 773Ds were not as Wyant represented them to be. Indeed, the Court wonders whether the trucks met any of the representations by Wyant. Per Holden's report, Wyant understated the trucks' usage hours by about 1/3, and he overstated or flatly misrepresented the condition and repair history on the trucks. *See* DE #54-11 (Holden Report); DE #85-3 (Holden affidavit with supporting invoices); DE #84-2 (Volk Affidavit). The trucks had material structural and conditional deficits directly contrary to Wyant's marketing. It must be noted that, in a great sense, the invalid hours description is irremediable; as a practical matter, no truck repair could turn back the usage clock and render the 773Ds 14000 instead of 19000 hour trucks.

Prima spent significant funds to make the trucks ready for use and then resold the equipment. The result was a total outlay of $261,963.57 by Prima, which included all repairs, painting costs, transportation costs incident to resale, and the loss on sale. Prima substantiates the figures by the affidavits from Volk and from Holden, who performed the repairs. The repairs allegedly were necessary to fulfill the conditions as Wyant represented and to permit a commercially reasonable sale by Prima. None of the Defendants specifically responded on the damages sought or damage calculations, and Defendants have presented no contrary proof on a) the condition of the 773Ds; b) Prima's remedial efforts; or c) the proper calculation of loss in the case.

A.  Fraud.

The Court is unable to find fraud against Wyant as a matter of law concerning the 773Ds. Serious questions exist regarding Wyant's knowledge and intent relative to the 773D trucks, and the Court concedes that Prima establishes many of the fraud elements. Indeed, as Prima stresses, Wyant was making the 773D representations at the same time he was committing mail fraud against Prima. While troubling, this does not **inevitably** lead to the conclusion, in the summary judgment context,

10

that Wyant's affirmations of fact concerning the 773D trucks were fraudulent. As Wyant pointed out in response, no record evidence exists concerning what Wyant actually knew about the truck condition, and a third party was involved in implementing repairs during the period of Great Lakes ownership. As detailed earlier, *see* supra n. 3, fraud necessitates proof by clear and convincing evidence. The inferences are strong here, and Wyant has significant problems because of the overall course of conduct, but the inferences do not establish fraud, as a matter of law, by clear and convincing evidence. Great Lakes, it should be noted, faces no fraud count.

B.     Contract theories.

Prima's case rests on the Kentucky UCC and theories of express warranty. *See* DE #88 Prima Reply, at 4 ("The warranties that Great Lakes, Mr. Wyant and Qualified breached are those express warranties . . . that were created by Mr. Wyant's email."). In the Court's view, only Great Lakes, the 773D owner, could qualify as a "seller" under the statute. KRS Chapter 355 defines a seller as "a person who sells or contracts to sell goods." *See* KRS § 355.2-103(1)(d). Importantly, courts have resisted making a disclosed agent liable as a seller under 2-313 of the Code. *See Oscar Mayer Corp. v. Mincing Trading Corp.*, 744 F. Supp. 79, 83 (D.N.J. 1990)(rejecting notion that a "broker" qualifies as a "seller" for warranty purposes: "[A] 'seller' is liable for express warranties. . . . As [the broker] never had title . . . it could not 'sell' them. . . . Accordingly, [the broker] cannot be liable for any express warranties."); *see also Service Iron Foundry, Inc. v. M.A. Bell Co.*, 588 P.2d 463, 470 (Kan. App. 1978)(noting that agent of disclosed principal not liable contractually for contract binding principal–"the contract is that of the principal alone"). Kentucky agency principles, applicable to the UCC, agree. *See Young v. Vista Homes, Inc.*, 243 S.W.3d 352, 363 (Ky. App. 2007). Because Wyant was not a seller under 2-313, he could not be liable under a UCC express

11

warranty theory related to the April 17, 2007 e-mail. [He could, however, be liable in fraud, as the Court referenced previously. Perhaps he also could be liable on a contractual theory separate from the UCC, but Prima did not make that argument or motion.[9]]

Great Lakes pins its defense on two main theories–that Wyant did not make "warranties" and that Wyant acted without authority. The Court rejects both.[10]

Bob Grivetti, a Great Lakes manager and the company's authority on the Prima deal, gave his deposition. In that deposition, Grivetti readily conceded that Wyant procured the trucks, arranged all repairs, did the marketing, found the buyer, and closed the deal for Great Lakes. Per his description, Grivetti did nothing but ok the final price and fill out the paperwork. *See* DE #56 Grivetti Dep., at 32, 33 (agreeing that it was "pretty much up to him [Wyant] to market them for resale"). Grivetti recognized Wyant as a broker, *see id.* at 11, but Great Lakes gave Wyant broad authority on arranging the 773D repairs and marketing the goods–Grivetti never laid eyes on the trucks in person and wholly relied on Wyant's decisions. Grivetti agreed that Great Lakes "pretty

---

[9]

Thus, as Kentucky recognized in *Pan-American Life Ins. Co. v. Roethke*, 30 S.W.3d 132, 133 (Ky. 2000), an agent acting tortiously within the scope of the agency can a) bind the principal involved and b) remain "liable for his own tortious conduct." Additionally, it is possible for a non-UCC seller to bind himself to an "independent warranty." *See Kelly v. Tillotson-Pearson, Inc*., 840 F. Supp. 935, 944 (D.R.I. 1994). However, evidence of the intention to provide a separable or additional warranty must exist, and Prima has not pursued that theory regarding the express warranties at issue. The lease scenario could fit within this category, in concept.

[10]

Great Lakes offers baseless arguments premised on an inspection duty and on alleged warranty disclaimer. No inspection duty exists as to an express warranty, and the 2-316(3)(b) argument, which addresses only implied warranties, is inapposite. Further, Great Lakes did nothing to communicate any limit on either Wyant's authority or on the disclaimer of any warranties. As such, the disclaimer and "as is" sale arguments, which have no effect on express warranties, are unavailing. This is not an implied warranty case.

much relied on Wyant to oversee this deal and oversee the repair of the trucks." *See id.* at 31. In the end, Great Lakes expressly authorized Wyant to make the sale to Prima, *see id.* at 32, and Grivetti only took care of the final billing: "And that's all I did, I billed them. I made the final paperwork." *See id.* As was typical in the Wyant/Great Lakes relationship, "[H]e'd make sure everything was taken care of." *Id.* at 15.

At a minimum, then, Wyant had actual authority[11] to sell the 773Ds and apparent authority to make the representations to Prima. The Great Lakes documentation made no effort to disclaim any warranties or in any way limit Wyant's authority, and Prima had dealt only with Wyant, the disclosed agent of Great Lakes, from the beginning. Prima did know that Great Lakes was involved–Great Lakes sent the invoice on the 773Ds.[12] However, Prima had no reason to doubt that Wyant was speaking for Great Lakes when he made the April 17, 2007 representations. Under Kentucky law, apparent authority is authority "the agent is held out by the principal as possessing. It is a matter of appearances on which third parties come to rely." *Mt. Holly Nursing Ctr. v. Crowdus*, No. 2007-CA-001708-MR, 2008 WL 2852881, at *3 (Ky. App. July 25, 2008)(quotation omitted). Here, Grivetti fully authorized Wyant to sell the trucks for Great Lakes. Thus, when Wyant negotiated with Prima, he undoubtedly acted with authority, and Grivetti testified that he gave Wyant the go ahead to close the deal. Whether Wyant exceeded his authority on the terms

---

[11] The UCC preserves agency law principles. *See* KRS § 355.1-103.

[12] Prima knew Wyant was acting for Great Lakes. Wyant's critical e-mails list Great Lakes on the address line and actually provide the contact information for Grivetti. There is no evidence that Great Lakes saw the e-mails, but Prima did know that Wyant was acting as a representative of owner Great Lakes. *See* Volk Dep., at 43 (Volk testifying he knew the trucks were "Patton's [treated as Great Lakes's] trucks"); *id.* at 12 (Volk acknowledging that Wyant was a "broker" and that he "did not own the machines, you know, they weren't his inventory").

stated may be a legitimate indemnity issue between Defendants, but Prima had no reason to doubt that Wyant could speak about the condition of the goods, just like he could speak about price and delivery terms. Thus, Wyant acted with authority and bound Great Lakes under the UCC and applicable Kentucky agency law.

Further, Great Lakes cannot cloak an agent with representative authority and then complain, relative to a harmed customer, when the agent exceeds his marching orders in executing that authority. Kentucky recognizes that an authorized agent that makes misrepresentations in the course of a sale binds the principal with respect to such misrepresentations: "[A] principal is responsible for such acts of his agent as are done within the scope of his authority, whether authorized or not[.]" *Isaacs v. Cox*, 431 S.W.2d 494, 495-96 (Ky. 1968)(quotation omitted); *Liberty Nat'l. Bank & Trust Co. v. Gruenberger*, 477 S.W.2d 503, 505 (Ky. 1972)("The principal may be held responsible for the misrepresentations made by his agent as part of the negotiations for the purpose of bringing about the sale of property even though the principal did not know of the agent's misrepresentations."); *Roethke v. Sanger*, 68 S.W.3d 352, 361 (Ky. 2001)("[T]he conduct must be of the same general nature as that authorized or incidental to the conduct authorized."). Here, without question, Great Lakes depended on Wyant to "oversee this deal." *See* Grivetti Dep., at 31. As such, Great Lakes "assumed the risk that its appointed agent might" make misrepresentations. *See Pan-American Life Ins. Co. v. Roethke*, 30 S.W.3d 128, 133 (Ky. 2000). Wyant bound Great Lakes by his e-mail descriptions and other condition-related representations.[13]

---

13

This does not include the lease representations. Wyant induced Prima, in part, through the promise of a third-party deal in place for the post-sale lease of the 773Ds. This part of the bargaining in no way involved the condition of the trucks and contemplated an arrangement between Wyant and Prima post-sale. As such, Great Lakes is not involved in that aspect, and Prima did not

14

Finally, the Court easily rejects the notion that Wyant's statements were not warranties under the UCC. Per the Kentucky statute, any "affirmation of fact . . . made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." *See* KRS § 355.2-313(1)(a). Similarly, any "description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." *See id.* at (1)(b). Wyant undoubtedly made both factual affirmations and goods descriptions that amounted to express warranties. Wyant provided the key e-mail just three days before deal consummation. Prima has averred the materiality of the representations, buttressed by an expert with knowledge in the field. The law does not require that Wyant have used warranty language, *see id* at (1)(c), and the specific descriptions provided and characteristics provided go well beyond any mere opinion or commendation concerning the goods. *Cf. Pitney Bowes, Inc. v. Sirkle*, 248 S.W.2d 920, 922 (Ky. 1952)("The generally recognized distinction between statements of fact and opinion is that whatever is susceptible of exact knowledge is a matter of fact, while that not susceptible is generally regarded as an expression of opinion."). Wyant described in detail, but quite inaccurately, the hours usage, repair history, current condition, and structural integrity of the trucks.

These matters are not sales puffery. *See, e.g., James River Equip. Co. v. Beadle County Equip., Inc.*, 646 N.W.2d 265, 269 (S.D. 2002)(noting that statement that goods are "of a certain age or year of manufacture[] are express warranties")(citation omitted); *id.* at 271 (holding that statements of seller "about the condition and **number of hours of use** . . . constitute an express warranty")(emphasis added). The UCC official comments apply in Kentucky, *see* KRS § 355.1-103,

---

make a motion for summary judgment as to that claim against Wyant/Qualified.

and those comments expressly state that "affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of those goods; hence no particular reliance . . . need be shown in order to weave them into the fabric of the agreement." *See* UNIF. COMMERCIAL CODE, § 2-313, Official Comment 3. Wyant's description are just that – objective factual statements of description and condition that are not, in any respect, opinion. Further, this is a transaction involving $600,000.00 in equipment, and it hardly seems doubtful that the empirical description of trucks bought sight unseen would be a part of the bargain reached. Again, the Defendants offer no proof that controverts the materiality or importance of the representations to the Prima negotiations. While the existence of a warranty frequently does present a factual question, here a material factual dispute, or any dispute about the representations whatsoever, simply does not exist. The only proof is that the representations stated occurred as part of the Wyant/Prima bargaining. No reasonable jury could conclude otherwise.

C. Damages

Prima seeks damages properly recoverable under the UCC. Prima attempted to reject, or revoke acceptance of, the 773Ds. In this scenario, Prima is entitled to the remedies provided in Part 7 of Article 2. *See* KRS § 355.2-711; § 355.2-714. Thus, if analyzed as an acceptance, the general remedy for breach of warranty "is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted[.]" *See id.* at (2). For rejected goods, Prima would be entitled to price and would have had the right to resell the goods per § 2-711(3). Either instance also would provide entitlement to potential incidental damages and/or losses related to care and custody of the goods.

The damages sought align with either remedial theory, and again, Great Lakes offers no proof in opposition to the figures sought. Defendants do not contest the commercial reasonableness of Prima's handling. As such, on the breach of express warranty claim, the Court will enter judgment against Great Lakes in the amount of $261,963.57.

As to interest, the Court refers to its prior explication of prejudgment interest. The Court believes that the respective losses did not here become liquidated until a) Prima resold the 773Ds and b) Prima paid each element of otherwise warranted repair. The Court finds interest warranted in substantial part (*i.e.*, as to the $50,000 loss fixed at the time of the 2008 sale by Prima and the $163,888.15 paid by Prima to EMR). The other listing of payments does not completely align with the repair balance of $48,075.42, and the Court is unable to include that element within any interest computation because the record does not adequately identify the date of loss for the full figure.

## IV. Conclusion

Consistent with this Opinion & Order, the Court therefore:

1) DENIES the motion for summary judgment of Defendant Great Lakes;

2) GRANTS-in-part and DENIES-in-part the motion for summary judgment of Plaintiff Prima.

The punitive damage claims against Wyant on the 773Bs, the fraud claims against Wyant on the 773Ds, and any claims not the subject of a summary judgment motion shall be reserved for trial.

The Court will enter a separate Judgment.[14]

This 17th day of March, 2009.



G:\07-338 Prima v. Wyant\primasjo&o.wpd

---

[14] The Judgment is not final because of the pendency of other claims. *See* Fed. R. Civ. P. 54(b). The Court would consider a motion on the severability of the Judgment.